**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| PURSUIT WEALTH MANAGEMENT, LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| | ) | 24 C 11324 |
| v. | ) ) | |
| PURSUIT WEALTH GROUP LLC, | ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**CHARLES P. KOCORAS, District Judge:**

Plaintiff Pursuit Wealth Management, LLC filed a three-count complaint against

Defendant Pursuit Wealth Group LLC, for trademark infringement under Section 32(1)

of the Lanham Act, 15 U.S.C. § 1114, *et seq.* (Count I), for unfair competition and false

designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125, *et seq.*

(Count II), and for deceptive trade practices under the Illinois Deceptive Trade Practices

Act, 815 ILCS 510/1, *et seq.* (Count III). Before the Court is Defendant's motion to

dismiss Plaintiff's entire complaint under Federal Rule of Civil Procedure 12(b)(6) for

failure to state a claim upon which relief can be granted. For the reasons explained

below, the motion is denied.

**BACKGROUND**

The following facts are taken from the complaint and are accepted as true for purposes of this motion. All reasonable inferences are drawn in Plaintiff's favor.

Plaintiff is a five-employee financial services firm located in Palm Beach Gardens, Florida. Since at least as early as June 7, 2019, Plaintiff has provided and continues to provide wealth management, financial planning, investment advisory, business services, and other related services (the "PWM Services") under the marks PURSUIT WEALTH and:



(the "PWM Marks").

Plaintiff offers and provides its PWM Services in numerous states across the United States, including New York, New Jersey, Florida, and Illinois. Plaintiff has used the PWM Marks in Illinois since at least as early as December 6, 2021. In addition to its common law rights, Plaintiff has nationwide rights in the PWM Marks, which Plaintiff applied to register with the United States Patent and Trademark Office ("USPTO") on November 3, 2020, for use with a number of business and financial services. *See* Dkt. # 1, ¶ 9. The PWM Marks registered with the USPTO on October 11, 2022 (Reg. Nos. 6,868,664 and 6,868,663) (together, the "PWM Registrations").

In addition to traditional advertising and marketing, Plaintiff markets and promotes its services on its website https://pursuitwealth.com/ (the "PWM Website")

and on LinkedIn, both which are accessible by the general public and followed by LinkedIn users in Illinois. Plaintiff's clients access their personal accounts through a secure login on the PWM Website.

As a result of Plaintiff's extensive use and advertising of the PWM Marks, and the substantial consumer recognition of the PWM Marks, the trade and consuming public have come to recognize and associate the PWM Marks with Plaintiff as the source or origin of the PWM Services, and an indicator of high-quality and trustworthy services Plaintiff offers. Consequently, Plaintiff has acquired a significant amount of goodwill in the PWM Marks, and the PWM Marks have become a valuable symbol of Plaintiff's goodwill.

On or about December 22, 2021, Defendant was organized under the laws of the State of Illinois. It has eight employees. In January 2022, Defendant registered the domain name www.pursuitwealthgroup.com (the "PWG Website") and created the Facebook page titled, "Pursuit Wealth Group." Defendant has offices in Joliet and Morris, Illinois.

Defendant offers and provides financial planning services, including, but not limited to, retirement planning, education planning, business services, estate planning, and tax services under the mark PURSUIT WEALTH GROUP and:



("PWG Marks"). In addition to promoting its services on the PWG Website and on Facebook, Defendant also promotes its services under the PWG Marks on LinkedIn and Instagram. Defendant does not own a federal trademark registration for the PWG Marks.

Defendant did not use the PWG Marks until two and a half years after Plaintiff first used the PWM Marks and nearly fourteen months after Plaintiff applied to register the PWM Marks with the USPTO. As of at least as early as November 3, 2020, Defendant was on constructive notice of Plaintiff's rights in the PWM Marks. Despite this, Defendant did not seek Plaintiff's authorization or permission to use the PWG Marks, nor did Plaintiff give Defendant permission to use the PWG Marks.

After becoming aware of Defendant's use of the PWG Marks, on April 26, 2023, Plaintiff sent PWG a cease-and-desist letter, putting Defendant on actual notice of the PWM Marks. After several discussions between the parties' counsel about a potential resolution, Plaintiff believed Defendant would be presenting Plaintiff with a settlement offer. Despite numerous follow-up communications, including as recently as July 2024, Defendant has not responded. Defendant is and has been on both actual and constructive notice of Plaintiff's prior rights in the PWM Marks but continues to use the PWG Marks in violation of Plaintiff's trademark rights.

As a result of Defendant's offering and providing financial services, business services, and wealth planning services under the PWG Marks, consumers are likely to continue to be confused as to the source, affiliation, or sponsorship of the services

4

offered by Defendant. For example, a law firm recently sent Plaintiff a subpoena for documents that was intended for Defendant.

Plaintiff alleges that it has suffered and will continue to suffer damage and irreparable harm to its reputation and goodwill because of Defendant's infringement. Plaintiff further alleges that Defendant has derived unlawful gains and profits from its unauthorized use of the PWG Marks.

As a result of the foregoing, Plaintiff brings claims against Defendant for trademark infringement and unfair competition and false designation of origin under the Lanham Act, as well as a claim for deceptive trade practices under the Illinois Uniform Deceptive Trade Practices Act ("UDTPA"). Defendant moves to dismiss Plaintiff's complaint in its entirety for failure to state a claim.

## LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. *Skinner v. Switzer*, 562 U.S. 521, 529 (2011). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). Rule 12(b)(6) limits the Court's consideration to "allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). The Court may also consider information in the public record. *See Geinosky v. City of Chicago*, 675 F.3d 743, 745 (7th Cir. 2012).

## DISCUSSION

Each of the claims at issue in this motion involves the same elements and proofs. *See KJ Korea, Inc. v. Health Korea, Inc.*, 66 F. Supp. 3d 1005, 1012 (N.D. Ill. 2014) (collecting cases). Thus, the claims rise and fall together.

### I. Trademark Infringement

To state a claim for trademark infringement under the Lanham Act, Plaintiff must sufficiently allege that (1) its mark is protectable, and (2) Defendant's use of the trademark is likely to cause confusion among consumers. *See SportFuel, Inc. v. PepsiCo, Inc.*, 932 F.3d 589, 595 (7th Cir. 2019); 15 U.S.C. § 1114. Here, the focus is on the likelihood of confusion element of the claim.

The "likelihood of confusion test is a fact-intensive analysis," that "ordinarily does not lend itself to a motion to dismiss." *Slep-Tone Ent. Corp. v. Coyne*, 41 F. Supp. 3d 707, 715 (N.D. Ill. 2014) (citing *Merck & Co., Inc. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402, 412 (S.D.N.Y. 2006)); *see also Republic Techs., NA. LLC v.*

*BBK Tobacco & Foods, LLP*, 2025 WL 1201401, at \*29 (7th Cir. Apr. 25, 2025)

("While it might be a slight overstatement to say that the question of likelihood of

confusion is all fact and no law, the point is close to the truth." (cleaned up)).  While

Plaintiff is not required to prove likelihood of confusion at this stage of the litigation, it

must still plead allegations that make it plausible that such likelihood of confusion

exists.  *See Fortres Grand Corp. v. Warner Bros. Ent. Inc.*, 763 F.3d 696, 700 (7th Cir.

2014) ("Allegations of consumer confusion in a trademark suit, just like any other

allegations in any other suit, cannot save a claim if they are implausible."); *Top Tobacco*

*v. Fantasia Distrib. Inc.*, 101 F. Supp. 3d 783, 790 (N.D. Ill. 2015) ("[T]his Court's role

at the motion to dismiss stage 'is limited to assessing whether [Plaintiffs have] pleaded

facts that plausibly could result in a successful outcome on the likelihood of confusion

element of [their] claim." (alterations in original) (citation omitted)).  To decide if there

is a likelihood of confusion, courts ask whether consumers who might use either product

would likely attribute them to a single source.  *Uncommon, LLC v. Spigen, Inc.*, 926

F.3d 409, 425 (7th Cir. 2019).

The Seventh Circuit "uses the following seven factors to determine the likelihood

of confusion: (1) the similarity between the marks in appearance and suggestion; (2) the

similarity of the products; (3) the area and manner of concurrent use; (4) the degree of

care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) any

evidence of actual confusion; and (7) the intent of the defendant to 'palm off' his

product as that of another." *Sorensen v. WD-40 Co.*, 792 F.3d 712, 726 (7th Cir. 2015).

"No single factor is dispositive," but three are considered "especially important": the similarity of the marks, the intent of the defendant, and evidence of actual confusion. *Id.* (citing *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 898 (7th Cir. 2001)).

### a. Similarity between the marks

When assessing the similarity between the two marks, the Court analyzes the marks as a whole and asks "whether the customer would believe that the trademark owner sponsored, endorsed or was otherwise affiliated with the product." *AutoZone, Inc. v. Strick*, 543 F.3d 923, 930 (7th Cir. 2008) (quoting *Nike, Inc. v. "Just Did It" Enters.*, 6 F.3d 1225, 1228–29 (7th Cir. 1993)). The Court "must compare the marks in light of what happens in the marketplace and not merely by looking at the two marks side-by-side." *Sorensen*, 792 F.3d at 726 (cleaned up). Here, both marks contain "PURSUIT" as the dominant word, with "WEALTH" in smaller font beneath it. "Where two marks share their most salient word, that fact weighs strongly in favor of similarity." *Oriental Fin. Grp., Inc. v. Cooperativa De Ahorro Y Crédito Oriental*, 832 F.3d 15, 28 (1st Cir. 2016).

To be sure, there are dissimilarities between the marks. The logos are different. Plaintiff's logo resembles a "P," while Defendant's logo is a compass. Plaintiff's logo is on top of the mark, whereas Defendant's logo is to the left side. The fonts are different. Plaintiff's logo is monochromatic; Defendant's logo contains blue. And of course, Defendant's mark has the word "GROUP" after "WEALTH." Nevertheless, drawing all reasonable in Plaintiff's favor, it is plausible that a consumer looking at

8

these two marks, for example, on an internet search result page, could be reasonably confused as to their source.

### b. Similarity of the product

Similarity of products as a factor in the likelihood of confusion analysis considers "whether the parties' products are the kind the public might very well attribute to a single source." *AutoZone*, 543 F.3d at 931 (cleaned up); *see also Forum Corp. of N. Am. v. Forum, Ltd.*, 903 F.2d 434, 442 (7th Cir. 1990) (trademark protection extends to "such other [products and services] as might naturally or reasonably be expected to come from [it]" (internal quotation marks omitted)). The parties do not need "to be direct competitors or sell the same products and services; it is enough for customers to believe that the infringing product could be from the same party." *Roadget Bus. Pte. Ltd. v. PDD Holdings Inc.*, 2023 WL 4865005, at *4 (N.D. Ill. 2023). Here, the parties offer similar financial and business services.

### c. Area and manner of concurrent use

When considering the two marks' areas and manners of concurrent use, the Court must assess "whether there is a relationship in use, promotion, distribution, or sales between the goods and services of the parties." *Ty, Inc.*, 237 F.3d at 900 (cleaned up). "When the goods and services are in close competition, marks need not be as similar in order to find infringement." *Lettuce Entertain You Enters., Inc. v. Leila Sophia AR, LLC*, 703 F. Supp. 2d 777, 786–87 (N.D. Ill. 2010). Courts may consider the parties' geographical distribution areas, whether there is any evidence that the products directly

compete, and whether the products are marketed in similar channels. *Ty, Inc.*, 237 F.3d at 900.

Defendant asserts there is no overlap in geographical location: Defendant has two offices in Illinois, Plaintiff has one office in Florida. There is no allegation that either party intends to open a new office in a different location. However, while Defendant argues that Plaintiff fails to allege any targeted marketing efforts outside of South Florida or the existence of an Illinois customer, the complaint does allege that Plaintiff offers its services in four states, including in Illinois, and that it has used the PWM Marks in Illinois since December 2021. Plaintiff also alleges that it is followed by LinkedIn users in Illinois.

### d. Intent of Defendant

This factor looks to whether Defendant intended to palm or pass off Plaintiff's marks as its own. "Passing off" is "trying to get sales from a competitor by making consumers think they are dealing with that competitor, when actually they are buying from the passer off." *Liquid Controls Corp. v. Liquid Control Corp.*, 802 F.2d 934, 940 (7th Cir. 1986). In the infringement context, "'intent' refers to the intent to confuse customers, not merely the intent to use a mark that is already in use somewhere else." *Roadget*, 2023 WL 4865005, at *5. Plaintiff does not allege Defendant was aware of Plaintiff's existence prior to receiving a cease-and-desist letter in April 2023, nor does it allege any facts suggesting that Defendant is trying to "pass off" Plaintiff's products or services as its own.

10

### e. Evidence of actual confusion

Defendant faults Plaintiff for failing to identify any actual confusion among existing or prospective customers. Defendant argues that, while Plaintiff alleges that a law firm recently sent it a subpoena for documents that was intended for Defendant, that fact is irrelevant to the issue of customer confusion. Evidence of actual confusion, if available, is entitled to substantial weight; however, it is not required in the likelihood of confusion analysis at this stage. *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 685 (7th Cir. 2001).

### f. Degree of care

This factor favors Defendant. Consumers are likely to exercise a high degree of care when it comes to investing and financial planning. *See Lincoln Fin. Advisors Corp. v. SagePoint Fin., Inc.*, 2009 WL 928993, at *9 (N.D. Ind. 2009) ("One would expect that individuals and businesses seeking to invest their money would have a higher sophistication level and would exercise greater care in selecting a service.").

### g. Strength of the mark

The "strength" of a trademark refers to the mark's distinctiveness, meaning its propensity to identify the products or services sold as emanating from a particular source. *CAE*, 267 F.3d at 684. Defendant argues Plaintiff's marks are weak because they are new and in limited use and because "Pursuit" and "Pursuit Wealth" are common names. According to Defendant, Plaintiff's marks are, at best, descriptive because "pursuit" is a literal categorization of Plaintiff's services. And because

Plaintiff's marks are descriptive, Defendant says, Plaintiff must establish secondary meaning to warrant protection of its marks, and Plaintiff makes no non-conclusory allegations of secondary meaning. In response, Plaintiff asserts that its active federal registrations for the PWM Marks support the plausibility of a finding of an inherently distinctive mark. In the Court's view, Defendant's arguments are more appropriately addressed at summary judgment with the benefit of a more fulsome record rather than on a motion to dismiss.

In the end, drawing all reasonable inferences in Plaintiff's favor, the Court finds Plaintiff has plausibly stated a claim for trademark infringement under the Lanham Act and Defendant's motion to dismiss is denied. Because the same two-factor analysis applies to claims for false designation of origin, *see Rust Env't & Infrastructure, Inc. v. Teunissen*, 131 F.3d 1210, 1214 (7th Cir. 1997), Defendant's motion to dismiss is denied with respect to Plaintiff's false designation of origin claim. The motion is similarly denied as to Plaintiff's state law claim. *See La Zaza Trattoria, Inc. v. Lo Bue*, 2012 WL 3308846 at *3 (N.D. Ill. 2012) ("Claims for unfair competition and deceptive business practices brought under Illinois statutes are to be resolved according to the principles set forth under the Lanham Act.").

## II.    Fair Use Defense

Defendant devotes several pages of its motion to a discussion of the fair use defense, which allows individuals to use otherwise trademarked language in a descriptive sense. *See Packman v. Chi. Tribune Co.*, 267 F.3d 628, 639 (7th Cir. 2001);

12

*Sunmark, Inc. v. Ocean Spray Cranberries, Inc.*, 64 F.3d 1055, 1058 (7th Cir. 1995).

"[A] defendant in a trademark infringement action may invoke the fair use defense by

demonstrating that the alleged infringement, 'is a use, otherwise than as a mark . . .

which is descriptive of and used fairly and in good faith only to describe the goods or

services of such party.'" *Sorensen*, 792 F.3d at 722 (quoting 15 U.S.C. § 1115(b)(4)).

In short, to raise the fair use defense successfully, Defendant must show that (1) it did

not use "PURSUIT WEALTH" as a trademark, (2) the use is descriptive of its goods,

and (3) it used the mark fairly and in good faith. *SportFuel*, 932 F.3d at 595. The Court

declines to resolve application of the fair use defense—a form of affirmative defense—

at this juncture. *C.f. Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690

(7th Cir. 2012) (explaining that "these defenses typically turn on facts not before the

court at [the motion to dismiss] stage"). Defendant can make its fair use arguments at

summary judgment.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss [19] is denied. A

telephonic status hearing is set for 6/10/2025 at 10:10 a.m. For the telephonic status

hearing, parties are to use the following call-in number: 1-650-479-3207, access code

2300    000    6287    or    with    the    following    link    https://us-

courts.webex.com/meet/Judge_Kocorasilnd.uscourts.gov.    When    using    the    link,

Counsel must type in their name when joining the call. Throughout the call, each

speaker will be expected to identify themselves for the record before speaking.

It is so ordered.

Charles P. Kocoras
United States District Judge

Dated: 5/13/2025